774 So.2d 830 (2000)
Douglas DIMICK, individually and Douglas Dimick as Trustee of the Dimick Family Irrevocable Trust, Appellants,
v.
Bradley RAY, Jean Johnstone, Churchill Technology, Inc. and Stark Industries, Inc., Appellees.
No. 4D00-728.
District Court of Appeal of Florida, Fourth District.
December 27, 2000.
*831 Delmer C. Gowing III and Robert R. Adler of Delmer C. Gowing III, P.A., Delray Beach, for appellants.
Daniel S. Rosenbaum and Danielle K. Brewer of Becker & Poliakoff, P.A., West Palm Beach, for Appellees-Bradley Ray and Stark Industries, Inc.
Joseph D. Farish, Jr., Peter Bassaline and Robert V. Romani of Farish, Farish & Romani, West Palm Beach, for Appellee-Jean Johnstone.
STEVENSON, J.
This is an appeal of a final summary judgment for the defendants in a civil action by a minority shareholder against the two majority shareholders and two corporations. The basis of the appeal of the final summary judgment is predicated on appellants' challenge to the trial court's order denying appellants' motion for leave to amend its complaint, filed prior to the hearing on the motion for summary judgment. *832 We hold that the trial court abused its discretion in denying the motion to amend and in entering final summary judgment.

Procedural Background
Appellants, Douglas Dimick, individually and as Trustee of the Dimick Family Irrevocable Trust, (hereinafter singularly referred to as Dimick), was a minority shareholder in Stark Industries, Inc. On May 22, 1995, Dimick filed a complaint, alleging that the majority shareholders, Bradley Ray and Jean Johnstone, entered into a series of Share Exchange Agreements whereby Stark Industries ultimately merged with Churchill Technology, Inc. Dimick alleged that he was not notified of this agreement, that his interests were improperly diluted thereby, and that Churchill, Ray and Johnstone violated provisions of the Florida Business Corporation Act, Chapter 607, Florida Statutes. In his original five-count complaint, Dimick named as defendants Churchill Technology, Rai Hamilton (Churchill's chief executive officer), Bradley Ray, and Jean Johnstone. An amended complaint was filed on October 11, 1996. This amended three-count complaint dropped a request for declaratory relief and added a charge of breach of fiduciary duty against Ray and Johnstone. Later, represented by newly retained counsel, Dimick filed a voluntary dismissal on October 1, 1997.
On the same day that the original complaint was voluntarily dismissed, October 1, 1997, Dimick filed a new four-count complaint. This new complaint contained most of the same allegations against Johnstone and Ray concerning their alleged violations of the Florida Business Corporation Act, but dropped Churchill and Stark Industries as defendants and added a fraud count against Bradley Ray. In response to the named defendants' December 2, 1997, motion to dismiss for failure to join indispensable parties, the trial court required Dimick to join Churchill and Stark Industries as party defendants. On February 3, 1998, Dimick then filed its "First Amended Complaint" naming Churchill and Stark Industries as defendants.
On December 7, 1999, Johnstone filed a motion for summary judgment, to which Ray and Stark joined, on counts I, II and III, arguing that Stark was a Michigan corporation, that none of the defendants were subject to the Florida Business Corporation Act, and that counts I, II and III alleged only violations of the Florida act. On December 17, 1999, in response to the motion for summary judgment, Dimick filed the motion for leave to amend the First Amended Complaint which is the subject of this appeal. In his motion, Dimick sought to amend the complaint to assert violations of Michigan corporate law. In addition, Dimick sought to add an allegation that Ray and Johnstone further diluted his interests in Stark by improperly, and without notice to him, transferring AR/Mediquest, an asset of Stark, to another company in which Dimick was not a stockholder. Dimick argued that he only became aware of this claim while in the process of discovery. This new allegation increased the potential damages in the lawsuit by some four million dollars.
The trial court denied Dimick's motion to amend, finding that (1) Dimick abused the privilege to amend, (2) appellees would be prejudiced by the amendment, (3) the proposed Second Amended Complaint was substantially different and stated different causes of action, and (4) the proposed amendment would be futile. The trial court then entered final summary judgment for the defendants as to counts I, II and III, which were all based on alleged violations of Florida Statutes Chapter 607, since there was no dispute that Florida corporate law was not applicable to the defendants. Count IV, a fraud count against Bradley Ray, remained pending.

Discussion
A trial judge's ruling on a motion to amend a complaint will be reviewed on appeal for an abuse of discretion. See N. Am. Speciality Ins. Co. v. Bergeron Land *833 Dev., Inc., 745 So.2d 359 (Fla. 4th DCA 1999); Life Gen. Sec. Ins. Co. v. Horal, 667 So.2d 967, 969 (Fla. 4th DCA 1996). Florida Rule of Civil Procedure 1.190(a), which governs amendments prior to trial, provides in pertinent part that leave of court to permit amendments of pleadings "shall be given freely when justice so requires." The public policy of Florida favors liberality in permitting amendments to pleadings so that the resolution of disputes will be on their merits:
Under the rule, a test of prejudice is the primary consideration in determining whether a motion for leave to amend should be granted, and leave to amend should not be denied unless the privilege has been abused or the pleading is clearly not amendable. New River Yachting Center v. Bacchiocchi, 407 So.2d 607, 609 (Fla. 4th DCA 1981), rev. denied, 415 So.2d 1360 (Fla.1982).
Leavitt v. Garson, 528 So.2d 108, 110 (Fla. 4th DCA 1988). Amendments should be liberally granted, particularly when the motion is made prior to the hearing on a motion for summary judgment. See Soucy v. Casper, 658 So.2d 1017, 1018 (Fla. 4th DCA 1995)(citing Smith v. Barrett, 564 So.2d 582 (Fla. 4th DCA 1990), and Leavitt v. Garson).

Abuse of the amendment process
No abuse of the amendment process has been shown. Here, we do not have a virtual endless stream of amendments, all failing to state even a basic cause of action, such as occurred in Kohn v. City of Miami Beach, 611 So.2d 538 (Fla. 3d DCA 1992). There, the plaintiff failed in four attempts to cure defects in his complaint. The Third District stated:
While there is no magical number of amendments which are allowed, we have previously observed that with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of discretion. There is simply a point in litigation when defendants are entitled to be relieved from the time, effort, energy, and expense of defending themselves against seemingly vexatious claims.
Id. at 539 (citations omitted).
After Dimick filed the voluntary dismissal and this new action, there was only one prior amendment to the complaint, and that was occasioned because appellees filed a motion to dismiss for failure to add an indispensable party. The First Amended Complaint added these new defendants. To the extent that amendments of the original complaint which were filed prior to the voluntary dismissal of the original complaint should be considered at all, the record shows that there was only one such amendment and that amendment streamlined the complaint from five (5) counts down to three (3).

Prejudice to the defendants
The trial court's finding that appellees will be "prejudiced" by the amendment is likewise not borne out by the record. It is axiomatic that under Florida law, the trial court must liberally allow amendments to a complaint unless the defendant would be "prejudiced" thereby. The cases have analyzed this prejudice element primarily in respect to the defendant's ability to prepare for the new allegations prior to trial on the merits. For instance, in McCullough v. McCullough, 156 Fla. 321, 23 So.2d 139 (1945), Frenz Enterprises, Inc. v. Port Everglades, 746 So.2d 498 (Fla. 4th DCA 1999), Designers Tile International Corp. v. Capitol C Corp., 499 So.2d 4 (Fla. 3d DCA 1986), and Santi v. Zack Co., 287 So.2d 127 (Fla. 3d DCA 1973), all cited in the trial court's order, amendments were not allowed which proposed to add new and different causes of action either during trial or after the trial had been completed. The prejudice in adding new causes of action or claims in those cases was obvious since the defendants had already fully prepared for, and in some instances, had actually completed the trial when the plaintiffs sought to add different claims.
*834 In the instant case, while Michigan corporate law may be different from Florida law concerning some of the issues involved, the case is still at the summary judgment stage. Any prejudice resulting from the amendment's focus on Michigan rather than Florida law would be easily addressed by allowing additional time for appellees to research the appropriate legal standards involved.[1] Likewise, while it does appear that Dimick's proposed addition of claims involving AR/Mediquest adds significant claims which had not been made previously, since the case is still at the summary judgment stage, additional time for preparation will also cure any prejudice resulting to defendants.[2]
In his order, the trial judge found that the proposed Second Amended Complaint was substantially different, stated additional causes of action, and materially changed the original asserted grounds of relief. As previously discussed, the fact that a proposed amendment made prior to trial adds a new claim or claims is only one factor in assessing "prejudice" to the defendant. Additionally, the trial court's reliance on the 1953 case, Lopez v. Avery, 66 So.2d 689 (Fla.1953), was misplaced. In Lopez, the court discussed the concept of "departure in pleading." Id. at 691. The Lopez court noted the then-prevailing law that an amendment to a pleading which stated an entirely different claim from the original complaint would be subject to a motion to dismiss by the defendant.
[T]he law is that a departure in pleading occurs when a party quits or departs from the case or defense which he has first made and resorts to another which gives rise to a wholly distinct and different legal obligation against his adversary. Crim v. Drake, 86 Fla. 470, 98 So. 349 [1923]; Livingston v. Malever, 103 Fla. 200, 137 So. 113 [1931]; Eagle Fire Co. v. Lewallen, 56 Fla. 246, 47 So. 947 [1908]; Gerstel v. William Curry's Sons Co., 155 Fla. 471, 20 So.2d 802, 804 [1945].
66 So.2d at 691. The court went on to find that the amendment in Lopez was not such a departure from the original pleading as to require dismissal of the amended pleading. See id.
The concept of "departure of pleading" as discussed in Lopez must be considered in light of the modern Florida Rules of Civil Procedure. These rules encourage the assertion of all available causes of action and claims against a defendant in one lawsuit. See Fla. R. Civ. P. 1.110(b) (Claims for Relief) and 1.110(g) (Joinder of Causes of Action; Consistency). To avoid prejudice from the trial of several distinct causes of action against a defendant, the trial court is given broad authority to order the separate trial of issues or claims. See Fla. R. Civ. P. 1.270(b) (Separate Trials). The decided preference of the modern rules for all claims to be brought in one action, coupled with the allowance for the liberal amendment of complaints, makes plain that the "departure" concern expressed in Lopez is only viable where allowing the amendment will prejudice the defendant.
We recognize that when a new cause of action is raised in an amendment, a statute of limitations problem might arise with the potential of prejudice to the defendant. This dilemma, created by the plaintiff's "departure" from the original causes of action asserted in the original complaint, is dealt with in Rule 1.190, which states that

*835 (c) Relation Back of Amendments. When the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading.
The trial court did make a finding that the proposed amendment would add new claims and change the issues in the case, but a change in the type of claim asserted and the possible injection of new facts to prove those claims are not the primary concerns of rule 1.190(c); the rule focuses not on whether the issues or claims have changed, but on whether the proposed amendment arose out of the same "conduct, transaction, or occurrence" involved in the original pleading. Our decision here is without prejudice for appellees to seek any available relief under rule 1.190(c) after the amended complaint has been filed.

Futility of the amendment
Lastly, the trial court was concerned that permitting Dimick to file his proposed Second Amended Complaint would be "futile" since service of process had not been made on Churchill, which had been ruled an indispensable party. Because Churchill was in bankruptcy, the trial court ruled that "waiting for the completion of the bankruptcy, as pled in the Plaintiff's proposed Second Amended Complaint (proposed fifth complaint), would be insufficient and the proposed complaint would be subject to dismissal for the failure to join an indispensable party." From this record, we cannot say that the inability of Dimick to immediately serve Churchill with process because of the bankruptcy would make the proposed amendment "futile ." After the amended complaint is filed, Dimick could move the bankruptcy court for some type of relief which would allow service, or Dimick could request a stay of the instant action pending completion of the bankruptcy proceedings. Either way, a complaint does not fail to state a cause of action simply because an indispensable party is in bankruptcy proceedings.
Accordingly, we hold that the trial court abused its discretion in denying Dimick's motion to amend. Accordingly, we vacate the summary judgment on appeal and remand for further proceedings.
REVERSED and REMANDED.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] Although our own review of the record suggests that Florida business law and Michigan law are fairly similar concerning dissenter's rights, the trial court's order provides that Dimick's counsel stated that "the Michigan law is substantially different from Florida law."
[2] Compare Daytona Beach Racing & Recreational Facilities District v. Volusia County, 355 So.2d 175, 177 (Fla. 1st DCA 1978), where the appellate court approved the trial court's denial of a motion to amend appellants' complaint, which was "belatedly" made at the hearing on appellees' motion for summary judgment and which injected "foreign" issues into the litigation.